Scribner, J.
The object and purpose of this proceeding is to restrain the city of Toledo, a municipal corporation of the third grade of the first class, from issuing, and negotiating its bonds under and by virtue of the provisions of section 2491c of the Revised Statutes of Ohio, forming a portion of an act passed April 7, 1892, (Ohio L. vol. 89, p. 236), supplementing section 2491 of the Revised Statutes as supplemented.
It is alleged, in substance, that on the 16th day of May, 1892, the common council of said city passed an ordinance providing for the issue and sale of the bonds of the city to the amount, in the aggregate, of $100,000, “ for the purpose of procuring territory, right ofi way, sinking wells for natural gas, purchasing wells and natural gas works, purchasing and laying pipes, and supplying said city with natural gas for public and private consumption,” in accordance with the provisions of the above mentioned act.
It is further averred “ that unless restrained by the order of the court, said bonds will be sold and issued by the city of Toledo, and the proceeds thei’eof appropriated and expended for some or all of the purposes mentioned in said ordinance ;”, “ that the city of Toledo is without power or authority to issue or sell its bonds as provided for in said ordinance hereinbefore referred to, and that the issue and sale of said bonds would be an abuse of the corporate powers of said city, and would be the execution of a contract in contravention of laws governing the same; and the expenditure of the funds arising from the sale of said bonds, in the manner proposed as above stated, would be a misapplication of the funds of said city, and would work upon the taxpayers of said city, and said city, great, lasting and irreparable injury.”
The plaintiff alleges that he is a taxpayer, a citizen and a resident of the city of Toledo; that he has requested in writing the city solicitor of said city to bring this action, which *432 request has been refused, and that he brings this action in behalf of said municipal corporation. He prays an injunction restraining the city and its officers from issuing or selling said bonds, or arty part thereof, and from expending or appropriating any part of the proceeds of a sale of said bonds.
A preliminary injunction was granted by the court of common pleas, upon the filing of the petition therein. Shortly thereafter, a general demurrer to the petition was interposed by the defendants. The court afterwards, on motion, dissolved the injunction, and the cause then coming on to be heard on the demurrer of the defendants to the petition, the demurrer was sustained, and the petition dismissed.
, The plaintiff appealed to the circuit court, and now moves the judges,of that court, at chambers, for a preliminary injunction restraining the defendants from issuing or negotiating the bonds in.question until the case can be finally determined by the court at its next term. We have been requested, however, to give the questions involved full consideration, and to make such order in the premises as may be regarded, so far as this court ,is concerned, as a final disposition of the case. And this request we have endeavored to comply with.
■ The plaintiff bases his objection to the proposed action of the city of Toledo upon the ground that the act embodying supplemental section 2491c of the Revised Statutes above referred to, passed April 7, 1892, “is a special act conferring corporate, powers upon said city of Toledo alone; and that it • does not, and can not, refer to any other city than the said city of Toledo, and that the terms and provisions contained in said act, qnd the power and authority therein sought to be granted, never could, can not now, and never can apply to (any other city than the city of Toledo. And that the said apt is in violation and in contravention of the constitution of the state of Ohio, and jiarticularly of section 1, article 13, of said constitution, and is null and void.”
• It is alleged that the city, of Toledo is the only city of the third grade ofthe first class now existing, or that has ever *433 existed in the state of Ohio ; that at .a municipal election, held in said city of Toledo in April, 1889, the question of issuing bonds as provided in section 3 of the act of the general assembly of the state of Ohio, passed January 22, 1889, entitled “ An act to authorize cities of the third grade of the first class to borrow money and issue bonds therefor, for the purpose of securing territory, right of way, sinking wells for natural gas, purchasing wells and natural gas works, purchasing and laying pipes, and supplying said cities with natural gas for public and private use and consumption,” was submitted to the vote of the qualified electors of said city, due notice of the submission of said question having been given as provided by section 3 of said act, and that said electors voted in favor of the issue of said bonds, and that thereupon said city of Toledo became and was authorized to issue the bonds in said act described, and for the purposes therein mentioned; that under and in accordance with the provisions of said act the said city, prior to April 7, 1892, issued and sold its bonds to the full amount of' $750,000 ; and that there is not now, and never has been authority granted to any city of the third grade of the first class to construct a natural gas plant, or to borrow money and issue bonds therefor, for the purpose of procuring territory, right of way, sinking wells for natural gas for public and private use and consumption, other than the authority granted in said last mentioned act; that “ the said city of Toledo is the only city of the third grade of the first class in the state of Ohio that now is, ever has been, or ever can be or become, under the existing laws of said state, authorized to construct a natural gas plant, or to borrow money and issue bonds therefor, for the purpose.of procuring territory, right of way, sinking wells for natural gas, purchasing wells and natural gas works, purchasing and laying pipes and supplying natural gas for public and private use and consumption.”
1. Several of the allegations of the petition touching the point in controversy appear to be argumentative in their *434 character, and averments of conclusions of law, rather than statements of fact. It is true, as averred, that the city of Toledo is the only city of the third grade of the first class that has ever had an existence in Ohio ; that at the municipal election held in said city in April, 1889, it was determined by a vote of the electors thereof that the said city should proceed, under the provisions of the act of January 22, 1889, and issue and dispose of its bonds as thereby authorized, for the purpose therein provided for; and that said bonds were issued and sold accordingly, prior to the passage of the act whose validity is now called in question.
It is argued that upon this state of undisputed facts the act of April 7, 1892, is necessarily a special act, applicable to the city of Toledo alone; that it undertakes to confer corporate powers; and that it follows necessarily that it violates section 1, of article 13, of the constitution of the state, and is therefore void.
It is well settled that power to issue and sell its bonds, when conferred upon a corporation, is a corporate power. Section 2491c of the act here in question purports to confer upon cities of the third grade of the first class, power to borrow money and issue and sell their bonds in any sum not exceeding $100,000. It undertakes, therefore, to confer upon such cities corporate power. If the act be a special act, as claimed, it follows that it is unconstitutional and void.
The vital question arising in the case, then, is this : Is section 2491c contained in the act of April 7, 1892, a special act?
It is insisted on the part of the plaintiff that by the terms of the act of January 22, 1889, to which the act now under consideration is supplementary, the first named act can never become applicable to any city which may hereafter become a city of the third grade of the first class; that by the terms of section 3; of that act, the mayor of any city to which it then applied, was required “ before the next general or municipal election after the passage ” of the act, “ to cause public notice of *435 the submission of said question [of issuing bonds] to be published in all the newspapers published and of general circulation therein, for at least ten days prior to such election,” and that “said election shall [should] be held, proclamation and returns thereof made in all respects, not otherwise herein provided, as municipal elections are now required by law to be held and returned in such cities.” And it is contended that no authority is given by the act to hold an election under its provisions after the date fixed for holding the general election in the year 1889.
The claim is, that by reason of these provisions, and the limitations alleged to be imposed thereby, the act has ceased to be operative except as to the city of Toledo alone.
Is this a correct interpretation of the terms and effect of the statute ?
By section 2 thereof it is expressly provided “'that before such bonds, or any of them, shall be issued by any such city, the question of issuing the same shall be submitted to a vote of the qualified electors of such city at any general or municipal election to be held therein ”; and by section 8 it is declared that “ if any election hereinbefore provided for shall appear by the terms thereof to be in favor of the issue of such bonds, the mayor of the city shall certify such fact,” etc.
These provisions are plain and explicit. They are free from all ambiguity, and but for the requirements contained in section 3, no question could well arise as to the true meaning and intent of the act in this particular. Plainly, its operative force and effect would continue until its repeal, and so long as it continued in force, any city becominga city of the third grade of the first class might avail itself of its provisions. And we think that the requirement of section 3 does not change the character, or abate from the force and effect of the statute in this regard. Section 3 applies only to such cities of the grade and class named as were such at the date of its passage, or became such at least ten days prior to the general election therein mentioned. We are clearly of the opinion that a failure on *436 the part of the mayor to take the steps required by section 3 would not have deprived the electors of the city of the right to have the question provided for in the act, submitted and voted upon at any subsequent election as authorized by section 2 of the act. Ohio ex rel. v. Commissioners, 17 Ohio St. 608; State v. Commissioners, 35 Ohio St. 458, 468 ; State v. Pugh, 43 Ohio St. 98, 114.
It is claimed, as we understand counsel, that the Supreme Court in the case of State ex rel. v. The City of Toledo, 48 Ohio St. 112, virtually determined that the vote provided for in the act was required to be taken at the next general or municipal election held after .the passage of the act. We do not so understand the ruling made in that case. The claim that such was the force and effect of the statute urns made by counsel upon the argument, and it was further insisted that under the then existing statutory provisions, no other city could become a city of the third grade of the first class within the time fixed by law for the holding of the then next general election; and as Toledo was the only city of that grade and class then existing, it followed that 'the act could not by any possibility apply to any city other than Toledo. The court, however, determined that cities in the state, other than Toledo, might, under existing legislation, become cities of the third grade of the first class in time for their electors to avail themselves of the provisions of the statute at the next general election. And having' met and answered this argument of counsel, the court left the matter there.
The court did not hold that a vote could not be taken under the terms of the statute, at any election, either general or municipal, occurring after the year 1889.
If the argument of counsel for this plaintiff as to the construction of the statute in this particular be well founded; that is to say, if the act of 1889 by its terms can only apply to such municipalities as were cities of the third grade of the first class at the date of its passage, or as might become such prior to the date of the general election to be held in the year *437 1889, then, in our judgment, it is obnoxious to the objection that it is a special act, and therefore void. For we do not understand it to be competent for the legislature to pass an act whereby it undertakes to confer corporate powers upon such corporations only as may be in existence at a certain fixed date. The act must be general in its terms, and embrace, so long as it remains in force, all cities of the enumerated grade and class that may be in existence at or subsequent to the date of its passage.
The following language contained in the opinion of the court as delivered by Owen, Ch. J., in the case of the State v. Pugh, 42 Ohio St. 98, 114, seems pertinent here: “ Although it is alleged in the petition and admitted by the demurrer that no other city than Columbus is within, or can, before July next, come within the class and grade contemplated by the act, yet if any other city may, in the future, by virtue of its increase in population and the ac • t-ion of its municipal authorities, ripen into a city of the same class and grade, and come within the operation of the act, it is still a law of a general nature, and is not invalid, even if it confer corporate powers. On the other hand, if it is clear that no other city of the state can in the future come within its operation without doing violence to the ‘manifest object and purpose of its enactment, and to the clear legislative intent, it is a local and special act, however strongly the form it is made to assume may suggest its general character.”
As we construe this statute, so long as it remains unrepealed, any city which may hereafter become a city of the grade and class mentioned may proceed under its provisions and exercise the privileges and powers thereby conferred. And such city would also become subject to the terms of section 2491c of the'act of April 7, 1892, and entitled to avail itself of the powers and privileges conferred by that act.
Upon this point the case of Kumler v. Silsby, 38 Ohio St. 445, and the statute (77 O. L. 83) there under consideration maybe consulted. We have carefully examined section 2491c *438 of the act here in question, and are of the opinion that its provisions operate prospectively as well as presently.
G. W. Kinney and Barton Smith, for plaintiff.
W. H. II. Bead, City Solicitor, for defendants.
2. The present case well illustrates the soundness of the proposition that an act conferring corporate powers cannot, constitutionally, be so framed as to apply only to corporations existing at a certain date, and the insuperable difficulties that would attend a different construction.
It has been adjudged by the Supreme Court of the state that the act of January 22, 1889, is constitutional. The city of Toledo has proceeded under its provisions, and expended large sums of money upon the enterprise authorized by that act. If the work so undertaken is incomplete, and more money is required for its completion and to render it efficient and useful, the legislature, according to the reasoning urged, is powerless to afford relief. The city of Toledo, although it has heretofore proceeded under a constitutional enactment, cannot complete the enterprise lawfully undertaken, for the reason as is urged, that it is the only city in the state to which a legislative act, intended to furnish the required aid, can apply. According fo the argument, the result would have been the same had there been a dozen cities of the grade and class named existing at the date of the general election in 1889, if none of them but the city of Toledo had chosen to take a vote upon the question to be submitted. A statute, therefore, conferring corporate powers, may be constitutional, and yet the general assembly be without power, by amendatory or supplementary legislation, to perfect or enlarge its provisions, and render them effectual. We find ourselves unable to concur in this view.
Upon the whole, our conclusion is that the motion for an injunction must be denied.